UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN THE MATTER OF THE TRUST ESTABLISHED UNDER THE POOLING AND SERVICING AGREEMENT RELATING TO THE WACHOVIA BANK COMMERCIAL MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-C30 | Case No. 19-CV-1387(PJS/BRT) Case No. 19-CV-2416 (PJS/BRT)  ORDER |

This litigation arose out of two trust-instruction proceedings ("TIPs") filed in state court, one by U.S. Bank National Association ("U.S. Bank") and the other by Wells Fargo Bank, N.A. ("Wells Fargo"). TIPs are somewhat unusual creations of state law that are almost always litigated in state court. But interested parties CWCapital Cobalt Vr Ltd. ("Cobalt") and Systed, LLC ("Systed") nevertheless removed these cases to this Court on the basis of diversity jurisdiction. Case No. 19-CV-1387, ECF No. 1 ¶¶ 8–13; Case No. 19-CV-2416, ECF No. 1 ¶¶ 8–13. After this Court discovered that it lacked sufficient information to determine whether it actually has diversity jurisdiction, the Court ordered the parties to file affidavits identifying their citizenship for diversity purposes. Case No. 19-CV-1387, ECF No. 388; Case No. 19-CV-2416, ECF No. 370. Upon receiving the parties' submissions—including an affidavit from one party whose membership structure is so complicated and includes so many entities that it literally

has been unable to determine its own citizenship—the Court ordered Cobalt[1] to show cause why these cases should not be remanded to state court for lack of jurisdiction. Case No. 19-CV-1387, ECF No. 410; Case No. 19-CV-2416, ECF No. 392.

Having considered Cobalt's submission as well as the unsolicited submission of parties-in-interest Azteca Partners LLC and Palomino Master Ltd., the Court finds that it does not have jurisdiction over these TIPs and accordingly remands them to state court under 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## I.  BACKGROUND

These related TIPs concern the administration of a securitization trust that holds loans backed by mortgages on commercial real estate.  Non-party Wachovia Commercial Mortgage Securities, Inc., conveyed the loans to the trust pursuant to a Pooling and Servicing Agreement ("PSA") in exchange for classes of certificates to be sold to investors.  Purchasers of the certificates receive monthly distributions in accordance with a priority scheme set forth in the PSA.  U.S. Bank is the current trustee; Wells Fargo is the trust's master servicer and paying agent.

---

[1]The Court's order also applied to Systed, as at the time it was unclear whether Systed remained a party.  *See* Case No. 19-CV-1387, ECF No. 410; Case No. 19-CV-2416, ECF No. 392.  Systed has now clarified that, having withdrawn its objections to the petitions, it is no longer a party.  Case No. 19-CV-1387, ECF Nos. 158, 419; Case No. 19-CV-2416, ECF Nos. 133, 400.

Shortly after the December 2018 distribution, CWCapital Asset Management LLC ("CWCAM"), which was then acting as the trust's special servicer, delivered two "officer's certificates" to Wells Fargo requesting that Wells Fargo create litigation reserves totaling $38 million to cover CWCAM's anticipated legal expenses in two pending lawsuits.[2]  To fund those litigation reserves, Wells Fargo clawed back $38 million that had been distributed to some of the junior certificateholders—specifically, the Class J and Class K holders.  The clawback completely eliminated the December 2018 distribution to the Class K holders and reduced the distribution to Class J holders by over $5.5 million.

Disputes then arose over whether (1) the PSA even permitted the creation of the litigation reserves and (2) how funds that were placed in those reserves but never used should be distributed.  Roughly speaking, the junior certificateholders—specifically, the Class J and Class K holders—contend that Wells Fargo had no authority under the PSA to create the litigation reserves and that the creation of those reserves constituted an "Event of Default" within the meaning of the PSA.  To remedy this default, they argue, the remaining reserve funds must be distributed to them and all new distributions must

---

[2] The parties dispute whether Wells Fargo was required to comply with the officer's certificates.  In reciting these background facts, the Court does not intend to take a position on this or any other disputed issue.

be paid exclusively to them until they have recovered the full amount of the clawback (plus interest).

For their part, the senior certificateholders contend that, regardless of whether the PSA authorized the reserves, the PSA requires the unspent funds in the reserves to be distributed on the next available distribution date according to the priority established in the PSA. It appears to be undisputed that, if the reserves are distributed in this manner, the Class J and Class K holders would not receive anything. In other words, even though the litigation reserves were created by clawing back funds from the Class J and Class K holders, those holders would not receive a penny of the unspent reserves.

Faced with competing claims to the reserves, U.S. Bank, in its capacity as trustee, brought a TIP in state court, seeking instructions concerning the proper interpretation of the PSA. Case No. 19-CV-1387, ECF No. 1-1; Minn. Stat. § 501C.0201(a); *id.* § 501C.0202(4), (24). The parties refer to the case filed by U.S. Bank as the "Trustee TIP." In its petition, U.S. Bank asks the Court to find, among other things, that U.S. Bank did not have any knowledge of an "Event of Default" within the meaning of the PSA, that U.S. Bank is not obligated to take any particular action with respect to the reserved amounts, and that U.S. Bank has satisfied its duties under the PSA in connection with the reserved amounts.

While the Trustee TIP was pending in state court, Cobalt and Systed (who are Class J and Class K holders) entered appearances and removed the case to this Court. Horrell Decl. Ex. 1.  Following removal, a number of additional parties made appearances and filed responses to U.S. Bank's petition, including CWCAM (the former special servicer), Case No. 19-CV-1387, ECF Nos. 55, 75; C-III Asset Management LLC (the current special servicer), *id.* ECF Nos. 42, 78; Wells Fargo (the master servicer and paying agent), *id.* ECF Nos. 45, 76; several senior certificateholders (Azteca Partners LLC, Palomino Master Ltd., and DW Partners, LP), *id.* ECF Nos. 49, 58, 79, 82; and additional Class J and Class K holders (Torchlight Value Fund, LLC[3] and Torchlight Debt Opportunity Fund II, LLC[4]), *id.* ECF Nos. 50, 77.

Several months after U.S. Bank commenced the Trustee TIP, Wells Fargo, in its capacity as master servicer, commenced a similar TIP that the parties refer to as the "Master Servicer TIP."  Case No. 19-CV-2416, ECF No. 1-1.  In its petition, Wells Fargo seeks an order holding, among other things, that Wells Fargo should instruct the Paying Agent (which is also Wells Fargo) that any unused reserve amounts should be distributed on the next distribution date according to the terms of the PSA and that, in

---

[3]Torchlight Value Fund, LLC is now known as Torchlight Credit Fund, LLC. Case No. 19-CV-1387, ECF No. 406 ¶ 5; Case No. 19-CV-2416, ECF No. 388 ¶ 5.

[4]Torchlight Debt Opportunity Fund II, LLC, dissolved in December 2020 and its assets are now held by Torchlight Debt Opportunity Fund II, LLC Liquidation Trust. Case No. 19-CV-1387, ECF No. 406 ¶ 3; Case No. 19-CV-2416, ECF No. 388 ¶ 3.

distributing the unused reserve amounts, Wells Fargo and all other parties responsible for administering the trust will be complying with their duties and the PSA.

As they did with respect to the Trustee TIP, Cobalt and Systed entered appearances and removed the Master Servicer TIP to this Court. Horrell Decl. Ex. 2. Following removal, the same set of parties that appeared in the Trustee TIP also entered appearances and filed responses to Wells Fargo's petition. *See* Case No. 19-CV-2416, ECF No. 62 (U.S. Bank); *id.* ECF No. 66 (CWCAM); *id.* ECF No. 68 (C-III Asset Management LLC); *id.* ECF No. 61 (Azteca Partners LLC and Palomino Master Ltd.); *id.* ECF No. 65 (DW Partners, LP); *id.* ECF No. 63 (Torchlight Value Fund, LLC and Torchlight Debt Opportunity Fund II, LLC). A number of parties then brought motions for judgment on the pleadings, which the Court denied. Since then, the parties have been engaged in discovery.

II.  ANALYSIS

As noted, Cobalt and Systed removed these cases on the grounds that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a).[5] Case No. 19-CV-1387, ECF No. 1

---

[5] The notice of removal in the Trustee TIP also cites 28 U.S.C. § 1331, which provides for federal-question jurisdiction. Case No. 19-CV-1387, ECF No. 1 at 1. But U.S. Bank's petition seeks relief solely under state law. *See id.* ECF No. 1-1. The notice of removal does not otherwise claim to invoke this Court's federal-question jurisdiction, nor has any party, in response to the Court's order to show cause, claimed that the Court has jurisdiction under § 1331. Notably, the notice of removal in the Master Servicer TIP does not cite § 1331, Case No. 19-2416, ECF No. 1, which suggests that the
(continued...)

¶¶ 8–13; Case No. 19-CV-2416, ECF No. 1 ¶¶ 8–13.  Section 1332(a) requires complete diversity; none of the parties on one side of the "v" may be a citizen of the same state as any of the parties on the other side of the "v."  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("[W]e have consistently interpreted § 1332 as requiring complete diversity:  In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.").

In determining who belongs on one side of the "v" and who belongs on the other, courts are not bound by the parties' designations.  *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) ("Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants.").  Instead, courts have a "duty . . . to look beyond the pleadings, and arrange the parties according to their sides in the dispute."  *Id.* (citation and quotation marks omitted).  The removing parties bear the burden of establishing jurisdiction, and "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court."  *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011) (citation and quotation marks omitted).

---

[5](...continued)
citation to § 1331 in the Trustee TIP was a mistake.

*A. Realignment*

As noted, these cases are somewhat unusual creations of Minnesota state law onto which the Federal Rules of Civil Procedure do not readily map, and that makes it somewhat challenging to figure out how all of the parties should be aligned. What is beyond dispute, however, is that the interests of the Class J and Class K holders are directly opposed to the interests of the senior certificateholders (Azteca Partners LLC, Palomino Master Ltd., and DW Partners, LP). The two groups are making conflicting claims to the remaining reserve funds; put simply, each group is trying to take money out of the pockets of the other group.

Regardless of how any other parties are aligned, therefore, it is clear that the Class J and Class K holders, on the one hand, and the senior certificateholders, on the other, are not on the same side of the "v." And because they are not on the same side of the "v," complete diversity is lacking: The senior certificateholders participating in this case include citizens of New York, New Jersey, and Florida, *see* Case No. 19-CV-1387, ECF Nos. 401–02, 404; Case No. 19-CV-2416, ECF Nos. 383–84, 386, while the Class J and Class K holders participating in this case also include citizens of New York, New Jersey, and Florida, Case No. 19-CV-1387, ECF No. 406; Case No. 19-CV-2416, ECF No. 388.

The parties opposing remand argue that, in a TIP, the petitioner should be aligned on one side and everyone else—including those who are fighting each other

over the same funds—on the other. Even if this argument were correct, complete diversity would still be lacking in the Trustee TIP, as both U.S. Bank and CWCAM are citizens of Ohio.[6] Case No. 19-CV-1387, ECF Nos. 396, 408. And if the Trustee TIP were to be remanded, then it is possible that the Master Servicer TIP would also have to be remanded, even if there is complete diversity in the Master Servicer TIP.[7] *See Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (noting "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*").

In any event, the Court does not agree that the petitioner should be aligned on one side of the "v" and everyone else should be aligned on the other side. In arguing that there is a TIP exception to the general obligation to align parties according to their interests, the parties opposing remand rely on *In re Trusteeship Created by LNR IV, Ltd.*, No. 12-CV-2789 (MJD/JSM), 2013 WL 1364255 (D. Minn. Apr. 4, 2013). To the extent

---

[6]In its order to show cause, the Court noted that it was unclear whether U.S. Bank asserts that it is a citizen of Ohio, Minnesota, or both. Case No. 19-CV-1387, ECF No. 410 at 3; Case No. 19-CV-2416, ECF No. 392 at 3. Either way, complete diversity is still lacking, as CWCAM is also a citizen of Minnesota. Case No. 19-CV-1387, ECF No. 396.

[7]The Court doubts that the parties could establish that there is complete diversity in the Master Servicer TIP—even if the petitioner were placed on one side of the "v" and all of the other parties were placed on the other side—given that CWCAM's membership structure is so complicated and includes so many entities that even CWCAM has not been able to determine all of the states in which it is a citizen. *See* Case No. 19-CV-1387, ECF No. 396 ¶ 51 n.2; Case No. 19-CV-2416, ECF No. 378 ¶ 51 n.2.

that *LNR IV* purports to recognize such an exception for TIPs, the Court does not find *LNR IV* persuasive on that issue, as *LNR IV* provided no analysis of the issue and simply cited a single case that does not even mention the topic of alignment. *Id.* at *3 (citing *In re Trusteeship Created by Alaska Indus. Dev. & Exp. Auth.*, No. 10-2996 (DSD/JJG), 2010 WL 4811899, at *1 (D. Minn. Nov. 19, 2010)). Notably, courts in other TIPs have followed the usual practice of aligning parties according to their interests when determining whether diversity jurisdiction exists. *See In re Trusteeship Created by Am. Home Mortg. Inv. Tr. 2005-2*, No. 14 Civ. 2494 (AKH), 2014 WL 3858506, at *10 (S.D.N.Y. July 24, 2014) ("Since Sceptre and Wells Fargo had different legal interests, they were considered opposing parties for diversity purposes."). Finally, while "later events do not deprive a court of jurisdiction over parties who were properly aligned in the first instance," *Ryan ex rel. Ryan v. Schneider National Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001) (per curiam), the interests of the Class J and Class K holders have been adverse to those of the senior certificateholders *from the outset*; the two groups did not become adverse after removal on account of "later events." The Court therefore rejects the argument that it cannot realign the parties for the purpose of determining whether there is complete diversity.

### B. Post-Removal Joinder

Relying once again on *LNR IV*, the parties opposing remand argue that the only parties whose citizenship matters for purposes of determining diversity jurisdiction are those parties who appeared in the lawsuits before they were removed to federal court. *LNR IV* (and cases citing it), in turn, rely on the general principle that jurisdiction is determined at the time of filing (and removal, if the case is removed). *LNR IV*, 2013 WL 1364255 at *2–4. Under this principle, a federal court is not divested of diversity jurisdiction if an existing party's citizenship later changes or if the amount in controversy later falls below the jurisdictional minimum. *See Saadeh v. Farouki*, 107 F.3d 52, 57 (D.C. Cir. 1997) ("if parties are diverse at the time of filing, a subsequent change in citizenship or domicile will not divest the court of jurisdiction"); *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822–23 (8th Cir. 2011) ("Neither the existence of a valid defense nor subsequent events reducing the amount in controversy divest the court of jurisdiction.").

This general principle does not apply to the addition of new parties, however; the addition of parties after filing (or removal, if the case is removed) can indeed divest a federal court of diversity jurisdiction. In fact, 28 U.S.C. § 1447(e) makes this clear: "If *after* removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may [1] deny joinder, or [2] permit joinder

-11-

and remand the action to the State court."⁸  (Emphasis added.)  *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) (Section 1447(e) "unambiguously demonstrates that a case can be properly removed and yet suffer from a failing in subject-matter jurisdiction that requires remand."); *see also Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 308 (8th Cir. 2009) ("Only when the potential defendant is deemed dispensable may the district court deny joinder and retain jurisdiction over the action."); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 725 (8th Cir. 2001) ("If subject matter jurisdiction exists at the time the action is commenced, it will generally not be divested by subsequent events.  The exception is where a nondiverse party must be joined because the party was indispensable at the time the complaint was filed." (citation omitted)); *ARE Sikeston Ltd. P'ship v. Weslock Nat'l, Inc.*, 120 F.3d 820, 833 (8th Cir. 1997) ("the district court could, in its discretion, choose either to deny ARE Sikeston's motion for leave to amend or to grant the motion and remand the case to

---

⁸Cobalt contends that, because the parties in this case were not added by "joinder" under either Rules 19 or 20 of the Federal Rules of Civil Procedure, § 1447(e) is irrelevant.  But Cobalt cites no authority supporting its contention that the manner of joinder is determinative.  The precise manner in which parties joined this case may not be covered by the express terms of § 1447(e) (because a TIP is such an odd proceeding), but that does not mean that those parties' citizenship is irrelevant.  The purpose of § 1447(e) is to give courts discretion to deny joinder in order to preserve jurisdiction; the statute's purpose is not to define all possible circumstances in which joinder destroys jurisdiction.  *Cf. Mayes v. Rapoport*, 198 F.3d 457, 462 n.11 (4th Cir. 1999) (explaining that § 1447(e) permits a court to deny joinder even where a plaintiff otherwise has a right to amend her complaint without leave of court).

-12-

state court"); *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987) ("most post-removal developments—amendment of pleadings to below jurisdictional amount or change in citizenship of a party—will not divest the court of jurisdiction but an addition of a nondiverse defendant will do so").[9]

The Court therefore rejects the argument that it should ignore the citizenship of the parties who joined these cases after they were removed to federal court.

### C. *In Rem* Jurisdiction

Cobalt next argues that, because these cases are *in rem* proceedings, the parties-in-interest that appeared after removal are not essential and their citizenship may therefore be disregarded. Cobalt does not suggest that these parties should be

---

[9]*Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991) (per curiam), is not to the contrary. *Freeport* did say that "[d]iversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action," *id.* at 428, but later cases have made clear that *Freeport*'s holding is much more limited than this broad language might suggest. *See Dominium Austin Partners*, 248 F.3d at 725 (citing *Freeport* but noting that the additional of a nondiverse party does destroy jurisdiction); *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 140 (1st Cir. 2004) ("[W]hen the Court declared that 'subsequent events' do not divest the district court of diversity jurisdiction, it was referring mainly to post-filing transfers of interest—not to all post-filing additions of non-diverse parties. Accordingly, we join several other courts of appeals that have read *Freeport* narrowly and restricted its precedential force to the precincts patrolled by Rule 25.").

dismissed, however, and while they remain in this action, complete diversity is lacking.[10]

Even if Cobalt had suggested dismissing the nondiverse parties-in-interest that appeared after removal, the Court would reject the suggestion. The parties-in-interest who claim an entitlement to the remaining reserve funds easily qualify as necessary parties. *See* Fed. R. Civ. P. 19(a) (a "[r]equired party" includes a person who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest"). And the Court—after considering all of the facts and circumstances of this case—also finds that those parties-in-interest are indispensable.

---

[10]In *CRI, Inc. v. Watson*, 608 F.2d 1137 (8th Cir. 1979), the Eighth Circuit indicated that because a party was not indispensable to the action, "its presence by intervention . . . did not divest the court of jurisdiction." *Id.* at 1140. As the Supreme Court has subsequently made clear, however, the presence of a nondiverse, dispensable party is indeed a jurisdictional defect that must be cured through dismissal. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572 (2004) (if a party is dispensable, "the jurisdiction of the court should be retained and the suit dismissed as to them" (citation and quotation marks omitted)); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 827 (1989) ("We decide today that a court of appeals may grant a motion to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction."); *see also* 28 U.S.C. § 1447(e) (requiring remand where a court permits joinder of a defendant whose presence destroys subject-matter jurisdiction). Likewise, the later-enacted supplemental-jurisdiction statute makes clear that federal courts do not have supplemental jurisdiction over the type of claim that *CRI* permitted. *See* 28 U.S.C. § 1367(b) (no supplemental jurisdiction over claims by or against parties who intervene under Fed. R. Civ. P. 24); *Exxon Mobil Corp.*, 545 U.S. at 554 ("Incomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere.").

*See Bailey*, 563 F.3d at 308 (articulating factors to consider and noting that "[t]he determination of whether or not a person is an indispensable party is one which must be made on a case-by-case basis and is dependent upon the facts and circumstances of each case" (citation and quotation marks omitted)).  It would be prejudicial to dismiss other parties from this case and allow Cobalt—alone among all of the parties who claim an interest in the reserve funds—to appear in this action.  Conversely, permitting all of the parties who claim an interest in the reserve funds to remain in this action will not prejudice Cobalt or any other party, as these cases may be fully litigated in state court.  In addition, the time that the parties have spent in this Court will not have been wasted, as the parties will be able to use whatever they learned in discovery in the state court on remand, and this Court has not issued any decisions that will somehow be nullified by a remand.

The Court acknowledges that there is non-binding authority indicating that *no* party is indispensable in an *in rem* action.  *See United States v. 499.472 Acres of Land More or Less in Brazoria Cty., Tex.*, 701 F.2d 545, 550 n.6 (5th Cir. 1983) ("since the proceeding is in rem, there are no indispensable parties; the failure to join a party does not defeat the condemnator's title to the land, though the party will retain his right to compensation" (citations and quotation marks omitted)).[11]  The Court does not regard this authority as

---

[11]Cobalt also cites a state-court decision in a separate TIP in which the court
(continued...)

germane to this case, however. First, this principle appears to have been applied primarily in condemnation cases, for which there is a separate statutory grant of federal jurisdiction. *See* 28 U.S.C. § 1358; *499.472 Acres of Land*, 701 F.2d at 546 (case involving valuation of condemned property). Here, however, jurisdiction is premised on complete diversity. If it were true that there is *never* an indispensable party in an *in rem* action regardless of the basis of federal jurisdiction, then there would *always* be diversity jurisdiction in such cases—or at least it would be remarkably easy for the parties to collude to create diversity jurisdiction. *Cf.* 13F Charles Alan Wright et al., *Federal Practice and Procedure* § 3631 (3d ed. 2009) ("Actions in rem or quasi-in-rem, like actions in personam, must meet subject matter jurisdiction requirements. Thus, either diversity of citizenship and the requisite amount in controversy or some other basis of federal jurisdiction must exist."); *Knudson*, 634 F.3d at 975 (noting that, in removal cases, courts require diversity both at time of filing and at time of removal to prevent defendants from being able to manufacture diversity jurisdiction). Notably, in other contexts, courts have found that parties can indeed be indispensable in *in rem* cases. *See*

---

[11](...continued)
denied CWCAM's motion to dismiss; CWCAM had apparently argued that it was not subject to personal jurisdiction in Minnesota. *See* Horrell Decl. Ex. 4. The one-page decision did not identify any reason other than that the case was *in rem*. But under Fed. R. Civ. P. 19(b), whether a party is indispensable depends on the particular facts and circumstances of each case. *Bailey*, 563 F.3d at 308. Moreover, as explained below, there is more at stake in this case than the disposition of the *res*.

*Franz v. Buder*, 11 F.2d 854, 857–59 (8th Cir. 1926) (affirming dismissal of *in rem* case for failure to join indispensable parties).

Setting that aside, this case is distinguishable because it is not solely an *in rem* action, as there is more at stake than disposition of a *res*. The Class J and Class K holders contend that, in addition to directing the distribution of the leftover funds in the reserves (the *res*) to them, the Court should also ensure that all future distributions—including those to which the senior certificateholders would otherwise be entitled under the PSA—are paid to them until they are made whole for the December 2018 clawback. Case No. 19-CV-1387, ECF No. 109 at 28; Case No. 19-CV-2416, ECF No. 85 at 28. In other words, the Class J and Class K holders, on the one hand, and the senior certificateholders, on the other, sharply dispute who is entitled to future distributions under the terms of the PSA. For these reasons, even if Cobalt had asked the Court to dismiss the nondiverse parties, the Court would decline to do so.

### D.  Discovery

Finally, Cobalt asks that it be permitted to conduct jurisdictional discovery in the event that the Court determines that diversity jurisdiction is lacking. So far as the Court can tell, this request relates mainly to CWCAM's citizenship, which CWCAM has not been able to determine. Because complete diversity is lacking regardless of CWCAM's citizenship, however, no discovery on that issue is warranted.

To the extent that Cobalt may be requesting discovery as to other parties' citizenship, Cobalt's request is denied. The current record establishes that complete diversity is lacking, and Cobalt has not offered anything but speculation that discovery might change the result. *See FDIC v. Dosland*, 50 F. Supp. 3d 1070, 1077 (N.D. Iowa 2014) ("a bare assertion that jurisdictional discovery would likely reveal facts necessary to support jurisdiction" is insufficient (citation and quotation marks omitted)).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Case Nos. 19-CV-1387 (PJS/BRT) and 19-CV-2416 (PJS/BRT) are REMANDED to Minnesota District Court, Second Judicial District pursuant to 28 U.S.C. § 1447(c).

Dated:  October 5, 2021                               s/Patrick J. Schiltz
                                                       Patrick J. Schiltz
                                                       United States District Judge